Next on our calendar is Austin v. Sessions. Sessions All right, please proceed. Good morning, Your Honors. Pour me some water, please. Ms. Marsha Austin is a 69-year-old lawful permanent resident, grandmother, and primary caretaker of her disabled U.S. citizen husband. While she's been clean and sober for seven years, she went through a period of serious addiction in her life. And it was during that period, approximately 20 years ago, when an undercover officer asked her to buy him $10 worth of crack cocaine, which she did. The question before this Court is whether that conviction subjects her to mandatory deportation, or whether, in the alternative, the agency has the discretion to consider the hardship that would befall her and her family. How many additional counts of conviction does she have on drug charges? She has, I believe, eight low-level possession offenses and one criminal sale of marijuana. And the most recent of those was in 2010? That's correct, Your Honor. Okay, thank you. Please proceed. There are two reasons why this is not an aggravated felony. I want to focus my argument on our first reason, our primary argument, that the minimum conduct simply does not rise to the level of an attempted transfer of a controlled substance under federal law. Could you start by addressing why this, I mean, you don't defer to summary orders, they're not precedential, but Hidalgo seems to me very closely on point. That's exactly where I was going, Your Honor. Thank you. So as this Court is well aware, in Hidalgo v. Lynch, the Second Circuit in a non-precedential decision recently found that attempted criminal sale of a controlled substance is an aggravated felony. And in that argument, however, the lead argument advanced by Ms. Austin here, that the minimum conduct doesn't rise to the level of an attempted transfer, was never presented in the briefs and was never discussed in the decision. As Judge Sackwell knows, because he was on the panel, that decision rested entirely... You'd be surprised. That decision rested entirely on what is Ms. Austin's alternative argument about legal impossibility. I'm not seeing that. I'm looking at Hidalgo. It looks at what is the minimum conduct criminalized by the state statute, and it points out that a person is guilty of an attempt to sell or offer in a third degree when she intends to offer and engages in conduct to effect that sale or offer, and then finds that that is encompassed within the aggravated felony determination. Why isn't that controlled? If you read on in the decision, it says that it's proffered that the minimum conduct is an attempt to attempt and that that's legally impossible, and that is an argument that we advance in our brief, but not our lead argument. Our lead argument is that what do you actually need to do to attempt to offer to sell? You look at that minimum conduct, and you measure it against the attempted transfer standard. If I could take a second, it goes back to the Pasquale decision, which you know well, which found that criminal sale of a controlled substance in the third degree was an aggravated felony, and it did so because it found the minimum conduct was an offer to sell. Didn't Pasquale also mention attempt? Attempt was part of it. So the categorical approach requires two steps. Identify the minimum conduct under the state offense, identify the federal standard, and measure them against each other. And in Pasquale, the federal standard that was identified was an attempted transfer. The minimum conduct from the state offense was an offer to sell. I thought you just said that was dicta. The language in Pasquale about attempt is dicta because that's not the situation in Pasquale. Am I wrong about that? No, I think we're misunderstanding each other. So in Pasquale, the conviction at issue, criminal sale of a controlled substance, they said the minimum conduct was an offer to sell. We all agree upon that. Nobody disputes it. They said now what's the aggravated felony standard? The aggravated felony standard, recall, anything is a drug trafficking aggravated felony. If it's criminalized as a felony under the Controlled Substance Act, the court in Pasquale found that an attempted transfer is criminalized in the Controlled Substance Act. And it found that an offer to sell, the minimum conduct, was akin to an attempted transfer. But here we don't have criminal sale of a controlled substance. We have attempted criminal sale. And by its very nature, attempt moves the point of criminal liability further back in the factual chain of events. And so now you have a more difficult question of whether the lesser minimum conduct for attempted offer to sell also rises to the level of attempted transfer under the Controlled Substance Act. Your job is made easier, however, because both parties, and indeed the court in Hidalgo, agree what the minimum conduct is. Reading from Hidalgo and endorsed on page 21 of the government's brief, the minimum conduct necessary to violate New York Penal Law 110-2239 is a question of New York law, not federal law. Taken together, these two statutes stand for the proposition that a person is guilty of an attempt to offer to sell a controlled substance in the third degree when she intends unlawfully and knowingly to offer to sell a narcotic drug and engages in conduct to effect that offer. And then the court goes on to give a very real example. For example, one who's prepared a written offer for sale and attempts to deliver it to the intended offeree has attempted to make an offer of sale even if the offer never reaches the intended recipient. And so the minimum conduct, everybody agrees, is a failed offer to sell. You try to make an offer, but you fail. And under New York law, that doesn't require possession. That doesn't require agreement. That doesn't require, in fact, any contact with any other person because you failed to deliver the offer. And what you need to do then is measure that minimum conduct against the federal standard articulated in Pasquale, the attempted transfer. Does that minimum conduct rise to the level of a minimum of an attempted transfer? And the binding case here is Delvecchio. And under Delvecchio, it doesn't come close. Delvecchio, though, spoke to the sufficiency of evidence to support the conviction of possession or attempted possession with the intent to distribute, I think, which is a kind of special circumstance, it seems to me, in which the court found that people didn't show up to take possession and therefore they hadn't done enough. They got convicted of the conspiracy charge and that was upheld. That's focusing on possession. Did they attempt to possess with intent to later distribute? Here we're talking about attempt to sell and an attempt to offer to sell, which Hidalgo said one can accomplish. That's not a logical impossibility and that that is within the federal statute as well. So I see Delvecchio as distinguishable. It's not controlling here. Okay. Your Honor, I read it a different way, but even put Delvecchio to the side. Look, the minimum conduct is agreement on. A failed attempt to deliver an offer where you don't possess any drugs, there's no agreement, there's no contact. I ask this court, does that rise to the level of something that could be criminalized as an attempted transfer of a controlled substance under federal law? I don't think you have the quantum of conduct necessary to get to criminal liability under federal law. So you're saying you would need to at least possess? I mean, we're kind of looking at the circumstances around. You would need to possess or would need to have reached agreement or would need to have made some prior contact with the persons involved? Absolutely. Would the statute need then to spell that out as an element of the crime that one possesses and then with possession then attempts to offer? Either the statute or the elements of the statute amplified by the binding case law from New York. If the New York case law has interpreted the offer to sell language as to require actual possession or if it interpreted it to require pursuant to an agreement or an agreement that was subsequently reached, then that would be sufficient. So either it needs to be spelled out in the statute or it needs to be spelled out in the New York case law, and here we have neither. I want to take a moment more. I felt there was tension between your two arguments, one saying that there's no realistic possibility that anyone would prosecute, but yet that is what the statute allows, and another saying that it's just logically incoherent to say there could be an attempt to attempt. How do you reconcile those? I think that's entirely fair, Your Honor. We are arguing in the alternative. Our primary argument is that this is entirely legally possible, that it can be done in the way that we just discussed about in terms of the minimum conduct in the alternative. And also that there's a realistic possibility that the state would prosecute in that circumstance, right? Don't you have to say that under Moncrief? Absolutely, Your Honor. And we not only can show that because they have other attempted offer prosecutions that we cite in our brief, an offer to bribe, not an offer to sell drugs, but legally indistinguishable, and because the Sixth Circuit courts that have considered the issue have found that where the plain language is, where the minimum conduct is clear in the plain language of the statute, you don't need to resort to instances of prosecution, right? Here the minimum conduct we're proffering is the language of the statute. Attempt to offer to sell are terms from the statute, and the First, the Third, the Fourth, the Sixth, the Ninth, and the Eleventh Circuits have all held that where the minimum conduct is plain on the face of the statute, that is sufficient to establish a realistic probability. So we have both agreement as to what the minimum conduct is, we have New York case law establishing what the minimum conduct is, and we have the plain language of the statute establishing what the minimum conduct is. If for any reason all of that does not convince the court, and you need fact-finding as to whether there was ever any prosecution, the BIA has said that requires fact-finding, a matter of forerunner, and a remand would be appropriate. And you don't think we would have to disavow our decision in Hidalgo? Absolutely not, because that was our alternative argument, which has been rejected, in a non-binding case, but been rejected. I think you can, consistent with Hidalgo, say a new argument has been advanced here about just what does it mean to attempt to offer, and does that rise to the level of something that would be a felony under the Controlled Substance Act? Very good. Thank you very much. You have two minutes to rebuttal. Mr. Harlan. May it please the Court, Nicholas Harlan, for the respondent, the Attorney General of the United States. In this case, the agency properly determined that Austin was ineligible for cancellation or removal, given that her New York conviction for attempted criminal sale of a controlled substance was categorically an aggravated felony, and this Court reviews that determination de novo. I'd like to track the analysis in my brief, in which we initially started out by noting that this Court, in the Pascal decision, recognized that the underlying conviction in this case for Section 220.39 is categorically an aggravated felony under the analogous federal statute. Similarly, attempt under New York law categorically constitutes an attempt under federal law, because there's no realistic probability that attempt under New York law would fall outside the federal definition of attempt. This analysis tracks the Court's decision in Hidalgo. It's actually identical, where the Court first noted that the underlying conviction had been deemed categorical by Pascal, and then that under INA 101A43U, if you are convicted of an attempt of an aggravated felony, you are also therefore guilty of an aggravated felony. And that rendered Ms. Austin ineligible for cancellation. What about the combination argument, though, that since 220.39 has offered a sale as a qualifying conviction, if you add to it 110, the attempt to that, what about the argument of the petitioner about that, that that combination results kind of in an absurd situation where you're convicted of attempt to offer to sell? But you don't. That's not the case, because in the Hidalgo decision, the Court specifically rejected the argument that an offer to sell equated with an attempt. And that is the crux of the substantial step argument that he's advancing primarily, or that Ms. Austin is advancing primarily, and also the improbable mens rea argument. If offer to sell is not an attempt, then that settles the issue. And it's not clear— That's the hypothetical in Hidalgo. The one who's prepared a written offer to sell and attempts to deliver it to the intended offeree has attempted to make an offer to sell. That hypothetical you're saying is still qualifying. That's still a good hypothetical, showing that it's not. And that's the difference. They refer to failed offer—excuse me. They refer to a failed offer to sell, but the government— Yeah, the offer never reaches the intended recipient.  Well, the opposing counsel often refers to a failed offer to sell, but that's not necessarily the same as an attempted offer to sell is the government's position on that. I'm concerned about the implications of the government's position because it seems to me that, using the metaphor of your adversary, that we get way back in the line of conduct that leads to the crime to find an action that turns out to be a disqualifier for seeking any relief for an immigration action, so we can have a removal happening because of an intent or an attempt to offer to sell absent any possession of drugs, absent any real assessment of the bona fides of the offer, that it just has such drastic consequences. And as an academic matter, we can conceive of all of these hypotheticals, but it has such practical consequences for Ms. Austin that I wonder at the government's position. Could you address that concern? Yeah, it goes back to another point that Ms. Austin hasn't shown her hypothetical that this results in her being guilty of an attempt of an attempt. It doesn't work because she hasn't met her burden to show that that is how the state of New York interprets her conviction. She hasn't cited to a single case where New York recognizes that under this law these two statutes together result in a conviction for an attempt to attempt, and that makes sense because the state of New York doesn't recognize a conviction for attempt for attempt. I thought counsel had cited various cases in other circumstances, not in drug circumstances, about attempts to offer bribes, for example. Correct. But I think by implication, because there was no citation to a drug context or this particular statute, that is evidence that New York, or at least it's evidence that they haven't established that New York views this conviction that way as an attempt for an attempt. So you think that there is no realistic possibility that the state would actually prosecute in a circumstance where it wasn't a bona fide offer and there wasn't access to drugs and something else to make it a substantial rather than an academic possibility that the crime would have been accomplished? Right, because the academic exercise is exactly what the Supreme Court in Duane's era is warned against. They said, you know, it's not just about legal imagination. There needs to be a realistic probability, and if you can't show that, then that's the fault. You really rely for it. To address my federal concern about the immigration consequences, which are dire, we kind of rely on the state's discretion in how to charge attempt crimes. The government thinks we have to because, as the court noted in Hidalgo, it's a question of state law. And what do you have to say about Del Vecchio? I agree with Your Honor earlier, just saying that it stood for kind of a unique situation and that it doesn't come into play here. Because, again, it's not showing how New York interprets the statute in this case. Well, they were looking for a substantial step in Del Vecchio, which they found wanting, even though there had been numerous conversations about setting the price of the purchase and arranging where to meet and so on. And so probably enough for the conspiracy conviction, but not the attempt. Here we don't have such kind of modulating. I mean, obviously we're not supposed to look at the evidence around the particular instance, but there's nothing in the statute that limits the state's authority to prosecute. Correct. Right? Correct. So doesn't Del Vecchio suggest that maybe we should look for more? Well, no, not to the extent that you can look past the statute on its face. And that leads me. I'd like to address this point where the various circuit courts have stated that if it's clear, I don't think it's clear what it means on the face. I mean, you have in Hidalgo they're saying the court acknowledged that an offer to sell was not an attempt. And then today, you know, he's saying that a failed offer to sell, that that is an attempt of an attempt. So it's not clear. And so, therefore, it is incumbent on Petitioner to bring forth cases, New York cases, that do clarify that ambiguity. How do you account for the other circuit decisions taking a somewhat different approach? I imagine that the evidence was not produced. Or the statutes at issue in those, excuse me, the statutes at issue in those cases were much clearer than the statute here. Just different state statutes. Correct. If there is no further questions, the government requests that the petition for review be denied. Thank you. Thank you. You have two minutes, Mr. Markowitz. Thank you, Your Honor. Just a few quick things. I want to be crystal clear. We're not arguing that the minimum conduct is an attempt to attempt, as was just stated. We're arguing that the minimum conduct was an attempt to offer to sell, which is exactly the language in the statute. And the government harps on the fact that I can't wave around, and I can't wave around a New York case where there's been a prosecution for an attempt to offer to sell a controlled substance. But that's not the way this court just did the analysis in Harbin, where the statute was clear. It's a case that just came out two weeks ago, where the statute was clear. A different statute. Totally different statute. It's a method of analysis. Right, right. Same as with the Supreme Court in Malooly and Escobar, where the statute is clear. They went straight to, what does the statute say? That's the minimum conduct. And that makes entirely a lot of sense, if you look at the origin of the realistic probability test. In Duane Azalvarez, there was an ambiguous statute, where one party said it reached unintended consequence. The other party said it only reached intended consequence. Tell me why Harbin's relevant. That was a fifth-degree drug sale. Harbin is only relevant for the mode in which it did the realistic probability analysis. It looked to what the statute was, and it said, I can tell what the minimum conduct is by reading the statute. I don't need to find a case where the minimum conduct was prosecuted to establish the realistic probability. The statute is plain on its face. It establishes a realistic probability. And it was just the – it didn't spell it out the way the other six circuits have spelled it out. The six circuits that I referenced previously have all said, when the statute is clear, you don't need to resort to finding an instance of prosecution. But that's the way the court did the analysis, as with the Supreme Court's decision in Malooly and Esquivel. And of the other circuits, would you point to one in particular that has a statute that's identical to New York's? No. They're all different. I mean, every circuit is looking at different statutes, and they're not identical. But what is identical is, in those cases and in this case, the proffered minimum conduct is plain on the face of the statute. And if I could take a second on Duanus. I see I have one second left. But in Duanus, because there was ambiguity in the statute, they couldn't tell whether the proffered minimum conduct was actually encompassed in the statutory text. And the case law didn't make clear. In that context, they said, we've got to figure out what the elements are. You've got to show me at least a case. We can't use just imagination to figure out what the elements are. But as this subsequent Supreme Court, Second Circuit, and other circuit case law makes clear, when the statute is clear, it takes no legal imagination. It's easy to get lost in the legal thicket on this case. But I want to bring us back to Judge Carney's point, which is, at bottom, this is about Ms. Austin. And this is about whether the agency has the discretion to consider the fact that she is almost 70 years old and infirm. The sole caretaker of her U.S. citizen. And. You have an I.J. who found, who said that in his discretion, he would not grant relief, even if he thought he had the authority to. That's correct. She. That's correct, Your Honor. She, she said she exercised a negative discretion. It was a close call, I know, because the first I.J. voiced favorable views of the equities. The equities involve a huge U.S. citizen family. And we're entitled to de novo review at the, at the BIA of that discretionary finding. We briefed it to the BIA. The BIA explicitly didn't reach the issue. And therefore, we, it's not properly before this Court. And if the Court is concerned about discretion, we need to get our bite at the apple at the BIA. I note one critical point in the agency's denying discretion at the I.J. level was that she had only been out for one year during the fact, time that she was clean and sober. She's now been out for four years clean and sober. Thank you very much. Thank you, Your Honor. I hope it isn't presumptuous of me to express our thanks to the Cardozo Clinic. I mean, they have done very important service in this case, both to the clients and to us. The notion that we just see the names on the briefs and aren't, don't, aren't happy about it and grateful would be a mistake. Thank you very much. My thanks. Thank you very much. We'll take the matter under advisement.